**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **IN RE APPLICATION OF USA PURSUANT TO 18 U.S.C. 3512 FOR 2703(d) ORDER FOR TWO APPLE ACCOUNTS SERVICED BY APPLE INC.** | ML No. 24-ml-773 |

*Reference:      DOJ Ref. # CRM-182-93352; Subject Account(s): Apple iCloud account(s) associated with Miftari_ilir@icloud.com and ilirps4@gmail.com*

**APPLICATION OF THE UNITED STATES**
**FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d)**

The United States of America, moving by and through its undersigned counsel, respectfully submits this *ex parte* application for an Order, pursuant to 18 U.S.C. §§ 2703(d) and 3512(a), and the Instrument as contemplated by Article 3(2) of the Agreement on Mutual Legal Assistance Between the United States of America and the European Union signed 25 June 2003, as to the application of the Treaty Between the United States of America and the Kingdom of Belgium on Mutual Legal Assistance in Criminal Matters, Belg.-U.S., Jan. 28, 1988, S. TREATY DOC. NO. 100-16 (1988) (hereinafter, the "Instrument"), to execute a request from the Kingdom of Belgium ("Belgium").  The proposed Order would require Apple Inc. ("PROVIDER"), an electronic communication service and/or remote computing service provider located in Cupertino, California, to disclose certain records and other information pertaining to the PROVIDER accounts associated with **Miftari_ilir@icloud.com** and **ilirps4@gmail.com**, as set forth in Part I of Attachment A to the proposed Order, within ten days of receipt of the Order. The records and other information to be disclosed are described in Part II of Attachment A to the

proposed Order.  In support of this application, the United States asserts:

## LEGAL BACKGROUND AND JURISDICTION

1.      PROVIDER is a provider of an electronic communication service, as defined in

18 U.S.C. § 2510(15), and/or a remote computing service, as defined in 18 U.S.C. § 2711(2).

Accordingly, the United States may use a court order issued under § 2703(d) to require

PROVIDER to disclose the items described in Part II of Attachment A.  *See* 18 U.S.C.

§ 2703(c)(2) (Part II.A of Attachment A); 18 U.S.C. § 2703(c)(1) (Part II.B of Attachment A).

2.       Pursuant to the applicable treaty, this Court has jurisdiction to issue the proposed

Order.  *See* Instrument Annex art. 16(1) (authorizing courts to issue orders necessary to execute

the request).  In addition, this Court has jurisdiction to issue the proposed Order because it is "a

court of competent jurisdiction," as defined in 18 U.S.C. § 2711.  18 U.S.C. § 2703(d).

Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.]

section 3512."  18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue

"a warrant or order for contents of stored wire or electronic communications or for records

related thereto, as provided under section 2703"); 18 U.S.C. § 3512(c)(3) ("application for

execution of a request from a foreign authority under this section may be filed . . . in the District

of Columbia").

3.       Section 3512 provides:

> Upon application, duly authorized by an appropriate official of the
> Department of Justice, of an attorney for the Government, a Federal
> judge may issue such orders as may be necessary to execute a
> request from a foreign authority for assistance in the investigation
> or prosecution of criminal offenses, or in proceedings related to the
> prosecution of criminal offenses, including proceedings regarding
> forfeiture, sentencing, and restitution.

18 U.S.C. § 3512(a)(1).  This application to execute Belgium's request has been duly authorized

by an appropriate official of the Department of Justice, through the Criminal Division, Office of International Affairs,[1] which has authorized execution of the request and has delegated the undersigned to file this application.  The undersigned has reviewed the request and has confirmed that it was submitted by authorities in Belgium in connection with a criminal investigation and/or prosecution.

4.          A court order under § 2703(d) "shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that . . . the records or other information sought, are relevant and material to an ongoing criminal investigation."  18 U.S.C. § 2703(d).  Accordingly, the next section of this application sets forth specific and articulable facts showing that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.

## RELEVANT FACTS

5.          Authorities in Belgium are prosecuting Llir Miftari ("Miftari) for homicide offenses, which occurred on February 1, 2024, in violation of the criminal law of Belgium, specifically, Articles 66, 392, and 393 of the Belgian Criminal Code.  A copy of the applicable laws is appended to this application.  The United States, through the Office of International Affairs, received a request from Belgium to provide the requested records to assist in the

---

[1]  The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in criminal matters.  *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81B and 81C (2018).

criminal investigation and/or prosecution.   Under the Instrument, the United States is obligated to render assistance in response to the request.

6.        According to authorities in Belgium, on February 1, 2024, Belgian authorities received a report that a man in Belgium (the "Victim") had been stabbed to death at Miftari's home (the "Residence").  Belgian authorities also received information from witnesses that the Victim, and three other male individuals, had gone to the Residence on the morning of February 1, 2024, armed with knives, and had gotten into an altercation.

7.        After reporting to the Residence and discovering the Victim's dead body, Belgian authorities conducted an autopsy to determine the time and cause of death.  Autopsy results revealed that the Victim died on February 1, 2024, at approximately 12:44 P.M., from injuries to his lungs caused by a sharp object.

8.        Belgian authorities searched the Residence to attempt to determine why the Victim may have been murdered, and discovered a rucksack in the garage, which contained approximately 400g of cannabis.  Belgian authorities believe that these drugs may be part of the reason for the altercation that led to the Victim's death.

9.        That same day, Belgian authorities questioned Miftari and the three other male individuals who attended the Residence on February 1, 2024 (collectively, the "Suspects"). During these interviews, Miftari admitted that he stabbed the Victim several times with a kitchen knife on the morning of February 1, 2024.  The Suspects all provided unclear and contradictory reasons for why the Victim was stabbed, but mentioned various iterations of "betrayal" and disputes between between Miftari and the Victim.

10.        Miftari also told Belgian authorities that he did not know where his cell phone was, and claimed that he must have lost it.  On February 3, 2024, Belgian authorities located

Miftari's cell phone in Miftari's sister's friend's car.  Through questioning Miftari's family

members, Belgian authorities learned that Miftari initially handed his cell phone to his mother on

February 1, 2024, after the Victim's murder and prior to the arrival of Belgian police, and told

her to "make it disappear."  The cell phone was then passed to his mother's partner, who

smashed it with a hammer, and then passed again to several more family members before

ultimately ending up with Miftari's sister's friend.

11.        Belgian authorities questioned Miftari again after locating his cell phone, and

Miftari then told Belgian authorities that he had given his cell phone to his mother beecause it

contained information about him trafficking drugs, including cannabis.

12.        Belgian authorities were unable to forensically analyze Miftari's physical cell

phone, as it had been destroyed by a hammer.  However, in addition to information about

Miftari's drug trafficking activities, Belgian authorities believe it may have contained

information regarding what led to the Victim's murder.

13.        Specifically, through analyzing other electronic devices, Belgian authorities

uncovered Snapchat messages sent between the Suspects in this case, which suggest that

beginning in or around January 2024, and continuing up until February 1, 2024, the Suspects had

been in a "disagreement" which caused Miftari to withdraw from the group.  The exact nature of

the disagreement is still unclear, but the based on these messages, Miftari's request that his

mother destroy his phone just after the Victim's murder, and his statement that his cell phone

contains evidence relating to drug trafficking, Belgian authorities believe that Miftari's cell

phone and potentially, his iCloud account(s), contain evidence relating to the reasons for the

altercation on February 1, 2024, which resulted in the Victim's murder.

14.        Miftari and Miftari's sister both told Belgian authorities that email addresses

**Miftari_ilir@icloud.com** and **ilirps4@gmail.com** were both connected to Miftari's iCloud account, and Miftari's sister showed Belgian authorities a screenshot on her phone which indicated that **Miftari_ilir@icloud.com** was linked to an Apple iCloud account.

15.     To date, Belgian authorities have been unable to confirm whether Miftari is the subscriber of the Apple iCloud account(s) associated with **Miftari_ilir@icloud.com** and **ilirps4@gmail.com** or whether he backed up materials on his cell phone to his iCloud, but believe that if he did, the account(s) will contain information regarding what led to the Victim's murder.

16.     They thus seek certain records from PROVIDER for the **Apple iCloud account(s) associated with Miftari_ilir@icloud.com** and **ilirps4@gmail.com**.

## REQUEST FOR ORDER

17.     The facts set forth above show that there are reasonable grounds to believe that the records and other information described in Part II of Attachment A are relevant and material to an ongoing criminal investigation.  Specifically, these items will help authorities in Belgium confirm the identity of the individual(s) who are responsible for the criminal activity under investigation, and to determine the nature and scope of that criminal activity.  Accordingly, the

United States requests that PROVIDER be directed to produce all items described in Part II of

Attachment A to the proposed Order within ten days of receipt of the Order.

Respectfully submitted,

VAUGHN A. ARY
DIRECTOR
OFFICE OF INTERNATIONAL AFFAIRS
OK Bar Number 12199

By: _____

Alyssa Ray
Trial Attorney
DC Bar Number 1671125
Office of International Affairs
Criminal Division, Department of Justice
1301 New York Avenue, N.W., Suite 300
Washington, D.C.  20530
(202) 532-4593 telephone
(202) 514-0080 facsimile
Alyssa.Ray2@usdoj.gov

## Relevant Provisions of the Belgian Criminal Code

**Article 66**
The perpetrator of a crime or offense shall be punished:

who has committed or participated in the commission of a crime or offense was directly involved,

whoever, by any act, has assisted in the commission of the crime or offense in such a way that without his assistance the crime or offense could not have been committed,

anyone who directly instigated this crime or offense through gifts, promises, threats, abuse of authority or power, criminal machinations or criminal malice, [[whoever has directly incited the commission of the offense by speech in public meetings or public places, or by any writing, printed matter, picture or emblem posted, distributed or sold, offered for sale or exposed to public view, notwithstanding] the penalties threatened by law for instigators of crimes or offenses, even in the event that such incitement has been ineffective].

**Article 392**
Homicide and injury committed or caused with the intention of committing an attack on a specific person, visited or accidentally encountered, even if the intention was dependent on some circumstance or condition and the perpetrator was mistaken about the person who was the victim of the attack, are qualified as intentional offenses.

**Article 393**
Homicide committed with intent to cause death shall be qualified as manslaughter. It is punishable by [an imprisonment of twenty to thirty years].